## TEXAS MUT. LIFE INS. ASS'N v. MORRIS.
### No. 1171.

Court of Civil Appeals of Texas. Waco.

Nov. 17, 1932.

Rehearing Denied Dec. 22, 1932.

Richey & Sheehy, of Waco, for appellant.

Taylor, Atkinson & Farmer and Munroe & Holt, all of Waco, for appellee.

BARCUS, J.

This suit was instituted by appellee against appellant on a policy of insurance for $2,-500 issued by appellant on the life of Tom C. Morris, father of appellee, together with 12 per cent. penalty and attorney's fees. The cause was tried to a jury, submitted on special issues, and resulted in judgment being entered for appellee for the amount of the policy, together with 12 per cent. penalty and $500 attorney's fees.

Appellant complains of that portion of the judgment which permitted appellee to re-cover interest and attorney's fees; his contention being that it is not such an insurance company as comes within the purview of article 4736 of the Revised Statutes, which authorizes the recovery of a 12 per cent. penalty and attorney's fees for failing to pay promptly a loss which occurs under a policy. We sustain this assignment. This identical question was passed on and appellant's contention sustained by the Supreme Court in the case of Logan v. Texas Mut. Life Ins. Ass'n, Appellant, 51 S.W.(2d) 288.

Appellant further contends that the trial court committed error in refusing to grant a new trial because of the misconduct of the jury and because one of the jurors was not qualified, in that he was biased or prejudiced against appellant at the time he was chosen as a juror. The record shows that each of the jurors on voir dire was asked the question as to whether he had any bias or prejudice in favor of or against either of the parties to the litigation, to which they answered "No." After the jury retired to consider their verdict, R. W. Lyons, one of the jurors, was elected as foreman. Immediately thereafter, and before the jury began its deliberation, said juror stated in the presence of the other jurors, "Well, let's get busy—let's get through with it. I know Mr. Perot is a crook anyhow —let's get through with it." Mr. Kaufman, one of the other jurors, then said to Mr. Lyons, "Uncle Bob (Lyons) you should not have said that—that wasn't in evidence and that doesn't come in evidence at all." To which remark, according to Mr. Kaufman, Mr. Lyons said, in substance, "It didn't make any difference, everybody knew Mr. Perot was a crook anyway." The juror Behringer testified that Mr. Lyons, in reply to Mr. Kaufman, stated in substance, "Well everybody had done decided what to do anyway." It appears there was no disagreement among the jury as to the verdict they should return, and they answered the four issues submitted by the court in about fifteen or twenty minutes. Each of the jurors who testified stated that the remark of the juror Lyons had no effect upon their verdict. Some of the jurors did not hear the remark. Others only heard the reprimand by the juror to Mr. Lyons, but did not remember what Mr. Lyons said in reply.

The record shows that Mr. Perot was the man in active charge and control, and was the principal owner of appellant corporation. Under the evidence he had the direct and personal supervision of all of the matters, especially those at issue, under the facts in this case; the controlling issue being whether appellant had notified Mr. Morris, the deceased, of a death assessment which had been levied on November 10, 1930, about six weeks before the death of Mr. Morris, and which Mr. Morris failed to pay.

■ Section 15, article 1, of our Constitution, provides that the right of trial by jury shall remain inviolate. Subdivision 4 of article 2134 of the Revised Statutes provides that any person shall be disqualified to serve as a juror in any particular case who has a bias or prejudice in favor of or against either of the parties. The important question, therefore, to determine in this case is, Was Mr. Lyons as a matter of law a qualified juror? It appears that none of the jurors was asked on his voir dire about his relationship with or knowledge of Mr. Perot or as to his bias or prejudice against him. Unquestionably, if the juror had been asked about his feeling toward Mr. Perot and if he had said he thought Mr. Perot was a crook, the trial court would have sustained a challenge as to said juror for cause. If, as a matter of fact, the juror went into the jury box with the belief that Mr. Perot was a crook, same disqualified him under the Constitution and statutes of this state from serving as a juror in this case. Makey v. Dryden (Tex. Civ. App.) 128 S. W. 633 (error refused); Rhoades v. El Paso & S. W. Ry. Co. (Tex. Com. App.) 248 S. W. 1064, 1065, 27 A. L. R. 1048; Burge v. State, 117 Tex. Cr. R. 141, 35 S.W.(2d) 735, 736; T. & P. Ry. Co. v. Elliott, 22 Tex. Civ. App. 31, 54 S. W. 410; Kansas City Life Insurance Co. v. Elmore (Tex. Civ. App.) 226 S. W. 709, par. 5; G., C. & S. F. Ry. Co. v. Dickens, 54 Tex. Civ. App. 637, 118 S. W. 612.

In Makey v. Dryden, supra, the court held that the juror was disqualified as a matter of law from sitting in a case where a negro was a party when he stated in the jury room to other jurors, "You are a strange kind of a white man that would give a negro anything against a white man. I would not give a damn negro anything"—emphasizing his feelings by striking the desk with his fist.

In Rhoades v. El Paso & S. W. Ry. Co., supra, the court stated: "Among the reasons which disqualify a juror in a particular case under the provisions of article 5117 [now article 2134] is the fact that such juror has a bias or prejudice in favor of or against either of the parties to the suit. In such cases it is not necessary that the disqualifying bias or prejudice shall relate solely to the party personally, but it may also relate to such party's case as presented for trial before the jury."

In T. & P. Ry. Co. v. Elliott, supra, the court held that a juror who was related within the third degree to the wife of one of the parties to the suit was as a matter of law disqualified, since another subdivision of the same statute disqualifies any person from sitting on a jury who is related by consanguinity or affinity within the third degree to either party to the suit.

In Burge v. State, supra, the court, in holding that a juror who was a brother of the principal witness against him, was as a matter of law disqualified because he was not

an impartial witness, stated: "In Steagald v. State, 22 Tex. App. 464, 3 S. W. 771; Massey v. State, 31 Tex. Cr. R. 371, 20 S. W. 758, it was held that 'impartial means not partial; not favoring one party more than another, unprejudiced, disinterested, equitable, just.'"

In Kansas City Life Insurance Co. v. Elmore, supra, the court held that a juror who was a neighbor and friend of the insured and of the insured's wife, who was plaintiff in the suit on the insurance policy, and who possessed a friendly feeling for them, and who stated that he would like for the plaintiff to win, but who further stated that he could and would go into the jury box with a free and impartial mind, was not a qualified juror, and reversed said cause because the insurance company was forced to take said juror over its protest.

We think, under the facts as revealed by the record in this case, the juror Mr. Lyons was disqualified from sitting as a juror in this case.

■■ Appellee contends that appellant was negligent in not ascertaining the fact that said witness did entertain said opinion of Mr. Perot before it accepted him on the jury, and that under the testimony the statement by said juror did not in any way influence the verdict of any of the jury. While each of the jurors who testified he heard the remarks of Mr. Lyons stated that he was not influenced thereby, said remarks were of such a character and coming from such a source that it is almost humanly impossible for a party to say that same did or did not have any effect upon their deliberations. Said statement should not have been made to the jury. As has been often said, the right of parties litigant to a fair and impartial trial before an unbiased and unprejudiced jury should and must be, in so far as possible, maintained inviolate by our courts. Our statutes provide that a person who entertains bias or prejudice against or toward one of the parties litigant is not a qualified juror. Our courts uniformly hold that, if one juror is disqualified, the parties have been deprived of their constitutional or statutory right to a fair and impartial trial. We think the trial court erred in refusing to grant appellant a new trial because of the disqualifications of the juror Lyons.

The judgment of the trial court is reversed, and the cause remanded.

ALEXANDER, J. (dissenting).

I do not believe that this case should be reversed on account of the alleged errors pointed out in the main opinion.

The Supreme Court in the case of Logan v. Texas Mutual Life Insurance Association, 51 S.W.(2d) 288, held that the appellant herein (appellee in that case) was not liable for the penalty and attorney's fees provided for un-

der Revised Statutes, article 4736. It will be noted, however, that the Supreme Court based its decision on the fact that, under its finding in that case, appellant was a mutual relief association and was operated without profit. In this case it appears without dispute that O. B. Perot owns the appellant corporation, as stated in the majority opinion, and it is further shown beyond dispute that said association is not a mutual relief association operated without profit, but is operated for the profit of Mr. O. B. Perot, its owner, president and general manager. Under the provisions of Revised Statutes 1895, article 3096, the article under which the appellant asserts its right to an exemption from the law regulating insurance companies generally, it was provided that, if such association was operated for profit to its officers, it should be amenable to the law regulating insurance companies. In the case of Farmer v. State, 69 Tex. 561, 7 S. W. 220, it was held that, if a mutual relief association such as was referred to in article 3096 was operated for profit to its officers, it was subject to the law regulating insurance companies generally. Moreover, the appellant association was incorporated in 1905, and said article 3096 was repealed in so far as it applied to associations incorporated under the laws of Texas by the Acts of the Legislature 1895, p. 97, § 25 (Revised Statutes 1895, article 3096y), long prior to the incorporation of appellant association, and said association never acquired any rights under said article 3096.

Furthermore, the appellant was incorporated under Revised Statutes 1895, art. 642, subd. 46. At the time of the incorporation of said association, said subdivision read as follows: Subdivision 46: "For the organization of fire, marine, life and livestock insurance companies."

Thereafter in 1907 said subdivision was amended so as to read, in part, as follows: "Subdivision 46. For the organization of fire, marine, life and livestock insurance companies; * * * and provided further, that all insurance companies mentioned in this subdivision shall be in all other respects subject to and shall comply with all of the provisions of Title 58, of the Revised Statutes of Texas, and any and all laws supplementary to or amendatory thereof." Acts 1907, c. 150, § 3.

The above section did not authorize the creation of any other kind of a corporation except an insurance company, and it is apparent that, since the section under which the appel-

lant was incorporated did not authorize the creation of any other kind of corporation except an insurance company, it must necessarily be an insurance company, and is subject to the law regulating insurance companies. As said by the Supreme Court in the case of Fidelity Mutual Life Ass'n v. Harris, 94 Tex. 25, 57 S. W. 635, 638, 86 Am. St. Rep. 813: "The rule is recognized that a corporation derives all its powers from the law which creates it, and that its transactions, wherever they may occur, must be within the powers conferred by that law." Moreover, by said amendment of 1907, the Legislature provided that all such associations should be subject to the law regulating insurance companies as it then existed and as it might thereafter be amended. The insurance law was amended in 1909 by the enactment of Revised Statutes 1925, article 4736, making all insurance companies liable for penalties and attorney's fees. Since the appellant is operated for profit, it has funds out of which it can pay such penalties and attorney's fees, and is liable therefor.

I recognize that, if the juror Lyons entertained a prejudice against Mr. Perot at the time he went into the jury box, he was not a fair and impartial juror, and the case should be reversed. However, upon the hearing on the motion for new trial, this juror testified that he did not remember having made the statement attributed to him. On such hearing he testified positively that at the time he was accepted as a juror in the case he had no bias or prejudice against Mr. Perot. He had previously had some dealings with Mr. Perot, but his dealings had always been satisfactory. The evidence introduced during the trial was sufficient to have created, for the first time, the prejudice evidenced by the statement alleged to have been made in the jury room. If in fact the juror entertained no prejudice against Mr. Perot at the time he was accepted as a juror, as testified to by him, the fact that he may have acquired such prejudice from the evidence during the trial would not require a reversal of the case. Griffin v. State (Tex. Cr. App.) 53 S. W. 848; Albright v. Smith (Tex. Com. App.) 288 S. W. 178; Allbright v. Smith (Tex. Com. App.) 5 S.W.(2d) 970. The trial court heard the testimony, and was in a better position to determine the weight to be given thereto. The fact that the trial court refused a new trial raises the presumption that that court concluded that the evidence was not sufficient to establish that the juror Lyons was prejudiced at the time he entered the jury box.